# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

STARK TRADING AND
SHEPHERD INVESTMENTS
INTERNATIONAL, LTD.,

        **Plaintiffs,**

    v.                           Case No. 05-C-1167

FALCONBRIDGE LIMITED AND
BRASCAN CORPORATION,

        **Defendants.**

---

## DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

---

On November 7, 2005, plaintiffs Stark Trading ("Stark") and Shepherd Investments International, Ltd. ("Shepherd") filed suit against the defendants Falconbridge Limited ("Falconbridge") and Brascan Corporation ("Brascan"). This case was originally assigned to the Honorable Thomas J. Curran. On January 17, 2006 both defendants filed separate motions to dismiss the complaint. The pleadings on these motions closed on April 18, 2006.

On June 5, 2006, upon Judge Curran's retirement, this case was randomly reassigned to this court, and all parties have consented to the full jurisdiction of a magistrate judge.

**SUMMARY OF FACTS ALLEGED IN COMPLAINT**

In February of 2004, Brascan, a Canadian asset management company based in Toronto, Ontario, Canada, informed the Board of Directors for Noranda, an international mining company headquartered in Toronto, Ontario, Canada, that it wanted to sell its 41% interest in Noranda.

(Docket No. 1 at 2, ¶2; 10, ¶24; 11, ¶35.) This resulted in various discussions between Brascan and potential purchasers, but none of these negotiations came to fruition. (Docket No. 1 at 2-3, ¶2.)

In order to facilitate Brascan's desire to cash out its investment in Noranda, Noranda and Falconbridge, Noranda's publicly traded subsidiary, referred to here as Old Falconbridge, devised a series of transactions. (Docket No. 1 at 4 ¶4; 14 ¶45; 15.) Noranda owned 59% of Old Falconbridge's stock and the remaining 41% was widely held. (Docket No. 1 at 15.)

There was a substantial relationship between Brascan, Noranda, and Old Falconbridge. (Docket No. 1 at 15.) Brascan owned 41% of Noranda, and Noranda owned 59% of Old Falconbridge. (Id.) At all relevant times, these three companies had overlapping management and several senior officers and/or directors of Old Falconbridge who owned little if any shares of Old Falconbridge stock owned a substantial number of shares of Brascan and/or Noranda. (Docket No. 1 at 15, ¶53.) Additionally, a substantial portion of Brascan was owned by an entity called Partners, Ltd., which was comprised of 35 shareholders, ten of whom were senior officers and/or directors of Noranda and/or Old Falconbridge. (Docket No. 1 at 15.) Partners, Ltd. owned sufficient stock in Brascan to be able to elect a majority of Brascan's directors. (Docket No. 1 at 11 ¶34.) Noranda and Old Falconbridge shared the same office suite for their corporate headquarters, and Brascan's corporate headquarters were in the same building but in a suite one floor above Noranda and Old Falconbridge. (Docket No. 1 at 9, ¶24; 11, ¶35; 13, ¶45.)

On March 9, 2005, Noranda announced an Issuer Bid for 63.4 million shares of its common stock, 21% of Noranda's outstanding shares. (Docket No. 1 at 4 ¶5; 28, ¶86.) The Issuer Bid commenced on March 24, 2005 and closed on May 5, 2005. (Docket No. 1 at 30, ¶93.) As consideration for stockholders tendering its shares, Noranda issued US$1.25 billion in junior preferred shares that had a redemption value of at least US$25.00 per share, plus unpaid dividends.

2

(Docket No. 1 at 4, ¶5.) These preferred shares had various "final redemption dates" depending upon series, but were otherwise redeemable at any time. (Docket No. 1 at 28, ¶87.) Each tendering common share holder received 0.789 preferred shares per common share tendered. (Docket No. 1 at 29, ¶90.) In light of the fixed US$25 value upon each preferred share, each tendering Noranda common shareholder effectively received US$19.72 per common share. (Id.) In the three months prior to the Issuer Bid, Noranda shares averaged US$17.29 and in the prior 15 years, had never traded over US$19.00 per share. (Docket No. 1 at 30, ¶92.)

Brascan tendered all 122 million of its Noranda common shares into the Issuer Bid, and on June 21, 2005 Brascan redeemed US$500 million worth of the preferred shares it received. (Docket No. 1 at 5, ¶8.) This thus reduced Brascan's ownership of Noranda from 41% to 20%, which could be sold more easily because it would not trigger regulatory scrutiny. (Id.)

Also on March 9, 2005, the same day that the Issuer Bid was announced, Noranda announced a Tender Offer wherein it offered each of Old Falconbridge's minority shareholders 1.77 shares of Noranda common stock in exchange for each share of Old Falconbridge stock tendered. (Docket No. 1 at 4, ¶6.) The Tender Offer commenced on March 24, 2005 and closed May 5, 2005. (Docket No. 1 at 30, ¶96.) Old Falconbridge created a Special Committee, comprised of individuals that it represented to be independent, to review Noranda's Tender Offer. Based upon a valuation conducted by a Canadian investment bank hired by the Special Committee, which stated that the offer was fair from a financial point of view, the special committee recommended that shareholders accept Noranda's offer. (Docket No. 1 at 31, ¶¶98-99.) In turn, the Old Falconbridge Board of Directors recommended that investors accept the offer. (Docket No. 1 at 31, ¶98.) The plaintiffs allege that the documents disseminated with the Issuer Bid and Tender Offer, including

3

the valuation and other relevant documents, contained numerous material omissions and misrepresentations. (Docket No. 1 at 40-61, ¶¶124-80.)

Stark is a limited partnership organized under the laws of Wisconsin and Shepherd is a corporation organized under the laws of the British Virgin Islands with its principle place of business in the British Virgin Islands. (Docket No. 1 at 8, ¶¶19-20.) Investment decisions for both plaintiffs were made by Stark Offshore Management, LLC in St. Francis, Wisconsin. Between March 17, 2005 and May 5, 2005, Stark purchased 1,373,000 shares and Shepherd purchased 4,119,000 shares of Old Falconbridge stock. (Id.) Shortly before the Tender Offer expired, the plaintiffs became aware of some alleged inaccuracies in the offering documents and raised their concerns with Noranda and Old Falconbridge as well as the Ontario Securities Commission. (Docket No. 1 at 68-69, ¶205.) Noranda and Old Falconbridge issued a press release wherein they denied the plaintiffs' allegations, and the Ontario Securities Commission allowed the Tender Offer to proceed. (Docket No. 1 at 69, ¶205.) The plaintiffs then tendered most of their Old Falconbridge shares out of concern that if they did not, they would be eventually squeezed out while having their capital tied up in the interim. (Docket No. 1 at 69, ¶206.)

The plaintiffs allege that the timing of the Issuer Bid and the Tender Offer , as well as other factors, led to the creation of a "when-issued" market in the preferred shares where, if the trading price of Noranda's common shares ever fell below US$19.72 per share during the bid period, arbitrageurs were able to realize an immediate profit prior to the completion of the Issuer Bid by, in part, purchasing Noranda common shares and then electing to exchange these common shares for preferred shares. (Docket No. 1 at 35, ¶108.) This "when issued" market artificially inflated Noranda's share price, and thus, upon the announcement of the Issuer Bid, Noranda's common stock share price rose to a 52-week high of US$19.25, during the pendency of the Issuer Bid,

4

Noranda's common stock price climbed to an all-time high of US$20.99, and on the last day of the Issuer Bid, the trading price of Noranda's common stock was US$19.72. (Docket No. 1 at 36, ¶¶110-11.) Therefore, the when-issued market had the effect of creating the impression that the consideration offered in Noranda's Tender Offer for Old Falconbridge's outstanding shares was more valuable than it was.

The plaintiffs allege that the defendants' scheme was successful in that Noranda was able to obtain 91% of Old Falconbridge and thus permit it to complete a merger of the two companies by squeezing out non-tendering shareholders. (Docket No. 1 at 5, ¶7.) This merger created a single company that retained the Falconbridge name, referred to here as New Falconbridge. (Docket No. 1 at 6, ¶9.)

On August 15, 2005, Brascan announced that it had sold a 19.9% interest in New Falconbridge, which was nearly all its remaining interest, to a Swiss mining company. (Docket No. 1 at 6, ¶10.)

On October 11, 2005, New Falconbridge announced a friendly takeover bid from Inco Limited for all of New Falconbridge's common shares at a price of US$28.91 per share. (Docket No. 1 at 6, ¶11.) This takeover triggered a change-of-control provision regarding the preferred shares and thus completed Brascan's cash-out of its investment in Noranda. (Docket No. 1 at 6, ¶11.)

**MOTION TO DISMISS STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." Generally, a plaintiff in federal court need only provide sufficient detail in a complaint to satisfy two requirements. First, the complaint must contain sufficient information "to give the defendant "fair notice of what the . . .

5

claim is and the grounds upon which it rests.'" <u>EEOC v. Concentra Health Servs.</u>, 496 F.3d 773, 776 (7th Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964 (2007)). Second, the plaintiff must set forth sufficient facts that "plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court. <u>Id.</u> (citing <u>Bell Atlantic</u>, 127 S. Ct. at 1965, 1973 n.14). However, heightened pleading requirements apply to certain claims, such as claims sounding in fraud. <u>See</u> Fed. R. Civ. P. 9(b); <u>Borsellino v. Goldman Sachs Group, Inc.</u>, 477 F.3d 502, 507 (7th Cir. 2007). A complaint alleging fraud must provide "the who, what, when, where, and how." <u>Borsellino</u>, 477 F.3d at 507 (quoting <u>U.S. ex rel. Gross v. AIDS Research Alliance-Chicago</u>, 415 F.3d 601, 605 (7th Cir. 2005)).

In determining whether a plaintiff has satisfied the pleading requirements, the court must read the complaint liberally, accept as true all well-pleaded allegations, and view all reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. <u>Int'l Med. Group, Inc. v. Am. Arbitration Ass'n</u>, 312 F.3d 833, 841 (7th Cir. 2002); <u>Mosley v. Klincar</u>, 947 F.2d 1338 (7th Cir. 1991). When considering a motion to dismiss under Rule 12(b)(6), the court is limited to considering only the pleadings, including documents referred to in the pleadings, and facts that may be judicially noticed. <u>Menominee Indian Tribe v. Thompson</u>, 161 F.3d 449, 456 (7th Cir. 1998); <u>Alioto v. Marshall Field's & Co.</u>, 77 F.3d 934, 936 (7th Cir. 1996). If the court considers extrinsic materials, the motion to dismiss must be converted to one for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(c); <u>Alioto</u>, 77 F.3d at 936. Ordinarily, a court is required to provide the adversely affected party with notice that it will convert a motion for judgment on the pleadings to one for summary judgment. <u>Alioto</u>, 77 F.3d at 936. However, under certain circumstances, such as when the "parties had every reason to know that extraneous material

6

was being considered," explicit notice is not required. <u>Fleischfresser v. Directors of Sch. Dist. 200</u>, 15 F.3d 680, 684 (7th Cir. 1994).

**FORUM NON CONVENIENS**

Both defendants argue that the complaint should be dismissed pursuant to the doctrine of forum non conveniens in favor of Canadian courts.

Under the doctrine of forum non conveniens, "a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." <u>Kamel v. Hill-Rom Co.</u>, 108 F.3d 799, 802 (7th Cir. 1997) (citing <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 507 (1947); <u>Koster v. Lumbermens Mut. Cas. Co.</u>, 330 U.S. 518, 527 (1947)). Two elements are required for dismissal on the basis of forum non conveniens. First, the question is whether there is an adequate alternative forum available. <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255 n.22 (1981). "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." <u>Id.</u> (citing <u>Gilbert</u>, 330 U.S. at 506-07). However, in rare circumstances the alternative forum may nonetheless be inadequate if, for example, the plaintiff's claims are not recognized in the foreign jurisdiction. <u>See</u> <u>id.</u> The plaintiffs do not dispute that the Canadian courts provide an adequate forum for their claims. Rather, the plaintiffs' objection focuses upon the second element of the forum non conveniens test.

Once it is determined that the alternative forum is adequate, dismissal on the basis of forum non conveniens is appropriate only if the convenience of the parties and the ends of justice are best served by dismissing the action. When a plaintiff has chosen to file suit in its home forum, the assumption arises that the forum is convenient and deference afforded the plaintiff's decision. <u>Piper Aircraft</u>, 454 U.S. at 241, 253, 255. However, if trial in the Eastern District of Wisconsin would be oppressive or vexatious to the defendants out of all proportion to the plaintiff's convenience, then

7

this court may dismiss the plaintiff's claim under the doctrine of forum non conveniens. American Dredging Co. v. Miller, 510 U.S. 443, 447 (1994) (citing Piper Aircraft, 454 U.S. at 241). This element is determined by evaluating numerous factors affecting the private interests of the parties and factors affecting public interests. See Piper Aircraft, 454 U.S. at 255.

Defendants provide essentially seven reasons as to why Canadian courts are a more appropriate forum for this case: (1) all witnesses other than the plaintiffs are located in Canada; (2) all relevant events occurred in Canada; (3) all documents are located in Canada; (4) third-party witnesses are located in Canada and beyond the subpoena power of this court; (5) Canada has a strong interest in regulating its own corporations; (6) American interests in this case are minimal; and (7) the only Wisconsin plaintiff is a large hedge fund that chose to invest in Canada.

The reasons cited by the defendants do not lead to the conclusion that the interests of justice would be served by dismissing this present action. Although travel of witnesses is naturally burdensome to some degree, such travel is commonplace in litigation. Travel between Milwaukee and Toronto can be accomplished easily and inexpensively. See ISI Int'l, Inc. v. Borden Ladner Gervais LLP, 316 F.3d 731, 732 (7th Cir. 2003) ("Travel between Ontario and Illinois requires only a short and inexpensive journey."). Moving this matter to Canada would simply transfer the burden of travel to the Milwaukee-based plaintiffs.

The defendants' assertion that all relevant events occurred in Canada is also unpersuasive. The defendants provide no explanation as to how this fact translates into inconvenience for the defendants. The defendants' claim that the transportation of documents shall be burdensome is also unpersuasive. Copying and transporting documents is an inherent part of discovery in any litigation. There are many reliable and inexpensive means by which to transport documents. Additionally, documents may be digitized as easily as documents are copied, and digitized documents may be

8

easily and quickly transferred electronically. The ready-availability of electronic transfer of documents renders distance largely irrelevant.

As for the limitations of this court's subpoena power, most any international litigation will result in some witnesses being outside of the subpoena power of the forum court. The fact that certain witnesses would be beyond the subpoena power of this court would be no less true of the Canadian court. The witnesses that the defendants point to as being beyond this court's subpoena power are best characterized as being peripheral to this litigation. Additionally, the defendants provide no reason as to why many of these witnesses, such as the defendants' own financial or legal advisors, would not appear voluntarily in Milwaukee if requested to do so by the defendants.

The defendants next argue that Canada has a strong interest in regulating its corporations and that the United States' interests in this matter are minimal. In support of its argument, the defendants point to the complaint the plaintiffs filed with the Ontario Securities Commission regarding the conduct that is the focus of this litigation in which the plaintiffs state that this is a matter "of critical importance to the Canadian capital markets." Additionally, the defendants point out that at no time during the time relevant to this litigation, did Old Falconbridge shares trade on any United States stock exchange.

Certainly, Canadian courts have an interest in addressing allegations of fraud made against its domestic corporations. However, United States courts have a similar interest in addressing alleged frauds perpetrated upon its citizens. The fact that the plaintiffs previously acknowledged that the transactions in question were of critical importance to the Canadian capital markets is not at all determinative. Simply because a matter is of critical concern for the Canadian capital markets does not necessarily mean that the matter is of no concern to other jurisdictions. Finally, the fact that Old Falconbridge stock never traded on any United States exchange is a fact that weighs in

9

favor of the Canadian forum. However, this single factor is mitigated by the fact that the stock of both Noranda and Brascan was traded on the NYSE.

Finally, the defendants argue that a factor weighing in favor of dismissing the complaint on the basis of forum non conveniens is the fact that this case is connected to the Eastern District of Wisconsin simply because an investor happens to be a resident of this district. However, this again is a frequent characteristic of litigation. Often times the venue for litigation is based upon the fortuitous situs of the plaintiff.

Having weighed the public and private interests affecting the appropriate forum for this litigation, the court concludes that litigating this matter in the Eastern District of Wisconsin as opposed to Canada would not be oppressive or vexatious to the defendants out of all proportion to the plaintiffs' convenience. At best, evaluating the forum of the Eastern District of Wisconsin versus the Canadian forum results in a draw. Given the deference that must be afforded to a plaintiffs' choice of forum, this court shall not dismiss the complaint pursuant to the doctrine of forum non conveniens.

## FALCONBRIDGE'S MOTION TO DISMISS

### Failure to State a Claim under Section 10(b) of the 1934 Act

New Falconbridge presents seven reasons as to why the plaintiffs have failed to state a claim under §10(b). New Falconbridge first argues that the complaint does not support the inference of scienter. Second, New Falconbridge argues the complaint does not allege any actionable misrepresentations or omissions. Third, New Falconbridge argues that the plaintiffs' allegations regarding §10(b) are not pled with requisite particularity. Fourth, New Falconbridge argues that the plaintiffs' allegations are not actionable under §10(b) because they are simply allegations of corporate mismanagement. Fifth, the plaintiffs are not able to plead that they relied upon allegedly

10

false or misleading statements. Sixth, New Falconbridge argues that the plaintiffs lack standing to bring an action under §10(b) with respect to statements made by Noranda regarding the Issuer Bid. Finally, New Falconbridge argues that the plaintiffs' §10(b) claims should be dismissed because the plaintiffs have failed to plead loss causation.

### Scienter

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires that, with respect to each act or omission, the plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "To establish liability under §10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'" Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2507 (2007) (quoting Ernst & Ernst, 425 U.S., at 193-194, and n.12 (1976)), or the "'reckless disregard for the truth of the material asserted,' whether by commission or omission." Ambrosino v. Rodman & Renshaw, Inc., 972 F.2d 776, 790 (7th Cir. 1992) (quoting Sundstrand Corp. v. Sun Chemical Corp., 553 F.2d 1033, 1044 (7th Cir. 1977); see also Tellabs, 127 S.Ct. at 2507 n.3 (noting that it was not deciding the issue of whether recklessness satisfies the scienter requirement). With respect to recklessness, the Seventh Circuit held:

> reckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

Sundstrand Corp. v. Sun Chemical Corp., 553 F.2d 1033, 1045 (7th Cir. 1977) (quoting Franke v. Midwestern Oklahoma Development Authority, CCH Fed. Sec. L. Rep. 95,786 at 90,850 (W.D. Okl. 1976)). The court continued by noting that the type of recklessness required must be

11

"equivalent to wilful (sic) fraud." Id. (quoting SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 868 (2d Cir. 1968) (Friendly, J., concurring) (en banc)). If the plaintiffs fail meet this pleading requirement, the court shall dismiss the complaint. § 78u-4(b)(3)(A).

"Under the PSLRA's heightened pleading instructions, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" Id. at 127 S. Ct. at 2508 (quoting 15 U.S.C. § 78u-4(b)(1); and (2)).

In New Falconbridge's motion to dismiss and the plaintiffs' response to that motion, both parties relied extensively upon Makor Issues & Rights, Ltd. v. Tellabs, Inc., 437 F.3d 588 (7th Cir. 2006). However, while the present motions were pending, the Supreme Court granted certiorari in Makor to resolve a split among the circuits regarding the issue with which this court is presented, i.e., what must a plaintiff plead with respect to scienter to survive a motion to dismiss? Following the Supreme Court's decision in Tellabs, both parties filed submissions to this court addressing how this decision affected their respective positions.

In Tellabs, the Court stated:

> It does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind. Rather, to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by § 21D(b)(2) must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct. To qualify as "strong" within the intendment of § 21D(b)(2), we hold, an inference of scienter must be  more than merely plausible or reasonable-- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.

Tellabs, 127 S. Ct. at 2504-05.

12

In conducting this inquiry, a court must consider "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id. at 2509 (emphasis in original). Further, when determining whether an inference is "strong," the court must undertake a comparative inquiry, and

> must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, i.e., of the "smoking-gun" genre, or even the "most plausible of competing inferences." . . . [T]he inference of scienter must be more than merely "reasonable" or "permissible"--it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

Id. at 2510 (internal citations omitted).

Specifically, the Court held, "the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" Id. at 2511.

In their response to New Falconbridge's motion to dismiss, the plaintiffs point to numerous allegations in the complaint, which they argue support a strong inference of scienter. (Docket No. 33 at 47-49.) The plaintiffs specifically point to their allegations that (1) documents contained misrepresentations and omissions relating to Noranda and Old Falconbridge's "respective assets and leverage," which was information critical to Noranda's and Old Falconbridge's core operations; (2) the dollar value of these errors was large; (3) the defendants were informed of errors in the valuation prior to the expiry of the Tender Offer and rather than correcting the errors, it issued a press release stating that the valuation complied with the law and the deal was attractive to Old Falconbridge shareholders; (4) the defendants stated publicly that a merger would not create any material synergies and thus knew there was no basis for marking up the value of the Noranda shares

Case 2:05-cv-01167-AEG   Filed 01/14/08   Page 13 of 30   Document 66

based upon resulting synergies; (5) because Noranda would continue as the surviving company following the merger, the defendants knew that the valuation should not have included an undisclosed takeover premium; (6) the Special Committee represented that they supervised the preparation of the valuation but Old Falconbridge's CEO was involved in the preparation of the valuation and reviewed its methodologies; (7) Noranda manipulated its stock price to increase the value of its consideration; (8) contrary to the defendants' representations, the Special Committee was not independent nor acting in the shareholders' best interests because members of the Special Committee were affiliated with the defendants; (9) Noranda represented that its stock was worth $19, whereas it had never traded that high; and (10) Brascan sold its interests in Noranda at a substantial premium over what it stood to make in its earlier unsuccessful effort to sell its interest. (Docket No. 33 at 47-49.)

New Falconbridge argues in its initial supporting brief and its reply that the plaintiffs fail to present sufficient facts to support their conclusory allegations. (Docket No. 43 at 9-10.)

Although plaintiffs' inferences of fraud are in many instances reasonable, the inference of fraud is not "cogent and compelling" or "strong in light of other explanations even when all the plaintiffs' allegations are reviewed together;" therefore the court will grant the defendant New Falconbridge's motion to dismiss the plaintiffs' §10(b) claims. See Tellabs, 127 S. Ct. at 2510.

Many of the plaintiffs' allegations relate to alleged errors in the valuation. New Falconbridge argues that there were no errors in the valuation and thus the plaintiffs' allegations could hardly be evidence of scienter. (Docket No. 23 at 41-43; Docket No. 43 at 10 n.12.) As with any factual allegation in a complaint, the court shall accept the plaintiffs' allegations regarding the existence of inaccuracies in the valuation as true. See Tellabs, 127 S. Ct. at 2509. Even accepting as

14

true that the plaintiffs' subsequent expert analysis has uncovered errors in the valuation, such hindsight analysis is insufficient to support the inference of scienter.

The valuation was conducted by TD, an independent Canadian investment bank. (Docket No. 41 at 23.) Although the plaintiffs take issue with certain of TD's assumptions and methodologies, the plaintiffs' allegations do not support the conclusion that the defendants' intent was to defraud. The assumptions and methodologies were TD's and were not under the direct control of the defendants. Although the Special Committee represented that it supervised the preparation of the valuation, the Special Committee, although related to the defendants, was independent of the defendants. Therefore, the fact that the Special Committee was in a position to learn of any alleged error in the valuation does not support a strong inference that any errors in the valuation persisted because of the defendants' fraudulent intent.

The fact that the valuation was independently conducted and independently supervised would not automatically immunize an entity for misrepresentations contained in a valuation or prevent errors in the valuation from supporting a strong inference of scienter; however, under the attendant circumstances, the fact that the valuation was conducted by TD and supervised by the independent Special Committee weighs heavily on the side supporting the conclusion that the persistence of the errors in the valuation were not the result of the defendants' fraudulent intent.

Although the plaintiffs allege that the significant dollar amount of these resulting errors supports a strong inference of scienter, this court finds most persuasive the principle set forth by the Sixth Circuit in Fidel v. Farley, 392 F.3d 220, 231 (6th Cir. 2004), when it stated, "Allowing an inference of scienter based on the magnitude of fraud 'would eviscerate the principle that accounting errors alone cannot justify a finding of scienter.'" Id. at 231 (quoting In re SCB Computer Tech., Inc. Sec. Litig., 149 F. Supp. 2d 334, 359 (W.D. Tenn. 2001)). Based upon the

relevant factors presented in this case, most notably that the valuation was prepared by an independent and competent investment bank, the court is unable to say that, based upon the dollar amount of the alleged error or any other specific error, that the defendants' failure to correct any alleged error in the valuation was reckless.

It is additionally notable that the valuation was provided to the plaintiffs. (Docket No. 1 at 42, ¶128, 58, ¶172.) It is clear that the plaintiffs carefully reviewed the valuation, even going so far as to alert the defendants of their concerns, prior to tendering their shares. In response to the plaintiffs' concerns, rather then making any correction, the defendants issued a press release affirming that the valuation complied with the law. The plaintiffs argue that the issuance of the press release affirming the appropriateness of the valuation supports a strong inference of scienter. The court disagrees.

"A subject of a Tender Offer or merger bid has no duty to issue a press release, but if it chooses to speak it must tell the truth about material issues." Ackerman v. Schwartz, 947 F.2d 841, 848 (7th Cir. 1991) (citing Basic Inc. v. Levinson, 485 U.S. 224, 232-36 (1988)). Based upon the circumstances, the court believes that the stronger inference drawn from the issuance of the press release is not that the defendants acted with fraudulent intent in devising and executing the complained of transactions, but rather that they honestly believed that there were no errors in the valuation. If the defendants possessed a fraudulent intent and arguably were aware of any errors, since there was no indication that the transaction was on the brink of failure, the most reasonable response from the defendants would have been silence. Certainly, the defendants were aware that any continued fraudulent representation, particularly in the highly-public form of a press release, would simply further expand their potential liability.

16

As for the plaintiffs' allegation that the defendants falsely represented that the Special Committee was independent and acting in the shareholders' best interests because members of the Special Committee had certain affiliations with the defendants, the fact that an affiliation existed is insufficient to create a strong inference of scienter. One might reasonably expect some degree of affiliation, as opposed to choosing only complete strangers to serve in such a critical capacity. However, the existence of an affiliation does not necessarily undermine independence. The plaintiffs' allegations, at most, demonstrate that members of the Special Committee were affiliated with related entities; the plaintiffs fail to plead sufficient facts to demonstrate that these individual affiliations were sufficient to undermine the represented independence of the Special Committee, and thus the plaintiffs fail to demonstrate that an alleged lack of independence on the part of the Special Committee supports a strong inference of scienter. As for the plaintiffs' allegations that the Special Committee was not acting in the best interests of shareholders, the court regards this as merely a conclusory allegation, insufficient to support a strong inference of scienter.

As for the fact that the complained of conduct resulted in a substantial benefit to Brascan, this too is insufficient to support a strong inference of scienter. Although courts have said, "The incentive to complete the lucrative sale of a business, and the personal pecuniary benefits associated therewith, can create a strong motive to engage in fraud and, logically, can raise an inference of scienter sufficient to support allegations of fraud," Danis v. USN Communs., Inc., 73 F. Supp. 2d 923, 940 (N.D. Ill. 1999) (quoting Zuckerman v. Fox Meyer Health Corp., 4 F. Supp. 2d 618 (N.D. Tex. 1998) (citing Trecker v. Scag, 679 F.2d 703 (7th Cir.1982))), this court does not find that pecuniary gain is sufficient to support an inference of scienter in light of the Supreme Court's holding in Tellabs.

17

Admittedly, pecuniary benefit is perhaps the most frequent motive for fraud. However, in addition to being a motive underlying fraud, pecuniary benefit is the underlying motive in most every action undertaken by a capitalistic business. When the same conduct may support both an inference of fraudulent or innocent motivation, it is only if the innocent inference is stronger that the court will conclude that the plaintiffs have failed in their burden of pleading scienter. Tellabs, 127 S. Ct. at 2510. Under the circumstances presented, it is the conclusion of this court that the stronger inference is that the defendants were motivated by innocent and ordinary capitalistic motives rather then fraud. The plaintiffs are essentially asking the court to infer that every time an entity undertakes an action for pecuniary benefit, the inference of fraud is at least as strong as any innocent profit-seeking motive. Such a pessimistic outlook on human nature is unreasonable; accepting the premise that fraud is equally as likely as any innocent motive, simply because the motivation was pecuniary benefit, would not bode well for our society. Rather, it is the conclusion of this court that simply because the end result was a gain for the defendants does not create a strong inference of scienter. See Schleicher v. Wendt, 2007 U.S. Dist. LEXIS 67924 (S.D. Ind. 2007) (citing Cutsforth v. Renschler, 235 F. Supp. 2d 1216, 1250 (M.D. Fla. 2002) (allegation that defendants fraudulently inflated the stock price to benefit the company "has no force since it would seem to apply to just about every case.")). As the court noted in Davis v. SPSS, Inc., 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005):

> The desire to increase the value of a company and attain the benefits that result, such as meeting analyst expectations and reaping higher compensation, are basic motivations not only of fraud, but of running a successful corporation. Were courts to accept these motives as sufficient to establish scienter, most corporate executives would be subject to such allegations, and the heightened pleading requirements for these claims would be meaningless. Thus, courts have repeatedly rejected plaintiff's allegations as sufficient to establish scienter.

18

Id. (citing cases). If pecuniary motive was to be equated with a strong inference that an entity acted with a fraudulent intent, then Congress' intent in establishing heightened pleading requirements under §10(b) and Rule 10b-5, see Tellabs, 127 S. Ct. at 2508, would be effectively vitiated for, as stated previously, it is the desire of pecuniary gain that underlies most every business transaction.

Finally, the plaintiffs allege that the defendants' scheme to inflate the value of its stock to create the false impression that the consideration in the Tender Offer was more valuable than it was, and Noranda's allegedly false representation that its stock was worth at least $19 per share, support a strong inference of scienter. Such tautology is insufficient to support a strong inference of scienter; the plaintiffs, in effect, contend that the conclusory allegation that the defendants engaged in fraud is strong evidence that the defendants intended to engage in fraud.

The specific actions that the plaintiffs point to as allegedly forming the basis for the purported fraud were publicly disclosed and either known or readily knowable to the plaintiffs at the time they tendered their Old Falconbridge shares. Under the circumstances of this case, the fact that much of the complained of conduct was publicly disclosed more strongly supports the conclusion that it was with innocent rather than fraudulent intent that the defendants acted. The plaintiffs' argument is largely one of "fraud by hindsight," see Tellabs, 168 S. Ct. at 2508 (quoting Denny v. Barber, 576 F.2d 465, 470 (2d Cir. 1978)), and thus having evaluated the plaintiffs' complaint as a whole, the court must conclude that the plaintiffs have failed to plead scienter with the specificity required by the Supreme Court in Tellabs. Therefore, this court will grant the defendant New Falconbridge's motion to dismiss the plaintiffs' §10(b) claim (Count II). The preceding analysis applies equally to the plaintiffs' claim against New Falconbridge for violations of Section 14(e) of the 1934 Act (Count I), and therefore New Falconbridge's motion to dismiss these claims shall be similarly granted.

19

**Reliance**

With respect to the plaintiffs' §10(b) and 14(e) claims, New Falconbridge argues that the plaintiffs' claims must fail because they are unable to adequately plead that they relied upon any allegedly misleading or false statements. Specifically, New Falconbridge points out that the complaint states that the plaintiffs learned of the alleged problems in the Issuer Bid shortly before the expiration of the Tender Offer. The plaintiffs' knowledge is evidenced in their April 29, 2005 letter to the Ontario Securities Commission ("OSC") made before the expiration of the Tender Offer, wherein the plaintiffs set forth many of the same alleged inaccuracies that form the basis for their present complaint. (Docket No. 23 at 51-52.)

The plaintiffs respond by arguing that they have adequately pled reliance, and alternatively, individual reliance is not an indispensable element of their claims. (Docket No. 33 at 52-54.) Specifically, the plaintiffs argue that all that must be shown is that the defendants' fraud induced the requisite number of shareholders to approve the proposed action that resulted in the complained of injury. (Docket No. 33 at 53.)

In reply, the defendants cite Makor Issues & Rights, Ltd. v. Tellabs, Inc., 437 F.3d 588, 595 (7th Cir. 2006), rev'd on other grounds, Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007), wherein the Seventh Circuit explicitly held that plaintiff's justified reliance upon the defendant's false statements is an element of a claim under §10(b) of the Securities Exchange Act and Rule 10b-5. Id. at 595 (citing Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 648 (7th Cir. 1997)).

The Seventh Circuit has made it clear that individual reliance is an element of a plaintiffs' claim under §10(b) of the Securities Exchange Act and Rule 10b-5. For the same reasons that

Case 2:05-cv-01167-AEG   Filed 01/14/08   Page 20 of 30   Document 66

individual reliance is an element of a §10(b) or Rule 10b-b claim, the court finds that individual reliance is an element of a claim under §14(e).

However, the court recognizes that there may be circumstances where an investor's knowledge of fraud will not prevent his injury. This may occur, for example, in instances where a non-tendering shareholder is forced out following a transaction wherein a sufficient number of other shareholders are deceived into tendering their shares. See, e.g., Plaine v. McCabe, 797 F.2d 713, 717 (9th Cir. 1986) (discussing an alleged violation of §14(e)).

Based upon the facts alleged in the complaint, this is not what occurred in the present case. Rather than exercising their dissenters' rights, the plaintiffs allegedly chose to tender their shares out of fear that they would later be forced out. In light of the plaintiffs' letter to the OSC, in tendering their shares, the plaintiffs were knowingly succumbing to what they now claim was a fraud. It is simply illogical to permit the laws that were designed to protect investors deceived by sophisticated companies engaged in fraudulent schemes to similarly be wielded as a sword by sophisticated investors who, for whatever reason, knowingly accepted the risk of entering into transactions they suspect were fraudulent.

The fact that it eventually turned out that regardless of the plaintiffs tendering their shares, sufficient other shareholders also tendered their shares so as to achieve the result desired by the defendants is irrelevant. At the time they tendered their shares, the plaintiffs had no way of knowing that the Tender Offer would be successful; for all they knew, the shares the plaintiffs tendered could have meant the difference in enabling the defendants to accomplish their alleged scheme. Although the plaintiffs allege that they believed the success of the Issuer Bid and subsequent merger to be inevitable, permitting shareholder plaintiffs to proceed with §10(b) and §14(e) claims after they

21

tendered their shares based upon a belief that objection to suspected fraud would be futile, would run contrary to public policy. Public policy favors shareholders suspicious of fraud speaking up.

A person who is aware of the alleged fraud before tendering his shares but nonetheless did so out of the belief that objecting would be futile will be barred from bringing a §10(b) or §14(e) claim based on an inability to plead the element of reliance. Any other result would run contrary to public policy in that it would not encourage the strong public policy in favor of preventing frauds before they occur. A shareholder believing that the Tender Offer is founded in fraud must choose a single consistent path—either object and do not tender his shares, or tender his shares and accept what may come. In the view of this court, §10(b) and §14(e) are available only for those who were unknowingly deceived and tendered their shares, or non-tendering shareholders who suffered an injury as a result of a sufficient number of other shareholders tendering shares as a result of the defendant's fraudulent statements. Neither instance allegedly occurred here, and thus the plaintiffs have failed to plead reliance. This defect in the pleadings constitutes another reason as to why the plaintiffs' §10(b) and §14(e) claims must be dismissed.

Although New Falconbridge presents numerous alternative reasons as to why the plaintiffs' §10(b) and §14(e) claims should be dismissed, having granted New Falconbridge's motion to dismiss these claims for the plaintiffs' failure to adequately plead scienter and reliance, it is not necessary to address New Falconbridge's alternative arguments.

**Failure to State a Claim under Section 9(a)(2) and 9(a)(4) of the 1934 Act**

In Count III, the plaintiffs allege that New Falconbridge violated §9(a)(2) of the Exchange Act ,and in Count IV, the plaintiffs allege that New Falconbridge violated §9(a)(4) of the Exchange Act.

Section 9 of the 1934 Act states, in relevant part:

22

(a) Transactions relating to purchase or sale of security. It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange--

\*\*\*

> (2) To effect, alone or with one or more other persons, a series of transactions in any security registered on a national securities exchange or in connection with any security-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act) with respect to such security creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others.
>
> \*\*\*
>
> (4) If a dealer or broker, or the person selling or offering for sale or purchasing or offering to purchase the security or a security-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act) with respect to such security, to make, regarding any security registered on a national securities exchange or any security-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act) with respect to such security, for the purpose of inducing the purchase or sale of such security or such security-based swap agreement, any statement which was at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, and which he knew or had reasonable ground to believe was so false or misleading.

> \*\*\*

(e) Persons liable; suits at law or in equity. Any person who willfully participates in any act or transaction in violation of subsection (a), (b), or (c) of this section, shall be liable to any person who shall purchase or sell any security at a price which was affected by such act or transaction, and the person so injured may sue in law or in equity in any court of competent jurisdiction to recover the damages sustained as a result of any such act or transaction.

15 U.S.C. § 78i

Section 9(a)(2) functions to preserve the reliability of reported trading activity as an index of the value of a security. "The central purpose of section 9(a) is not to prohibit market transactions which may raise or lower the price of securities, but to keep an open and free market where the natural forces of supply and demand determine a security's price." Trane Co. v. O'Connor Sec., 561 F. Supp. 301, 304 (S.D.N.Y. 1983) (quoting Chris-Craft Indus., Inc. v. Piper Aircraft Corp., 480 F.2d 341, 383 (2d Cir. 1973). By enacting § 9(a), Congress "sought to protect the small

investor by maintaining a market controlled by natural forces rather than by intervention of artificial manipulative devices . . . ." Id. at 305.

The elements of a violation of § 9(a)(2) in a private action brought under § 9(e) were determined [by the Second Circuit] in Crane Co. v. Westinghouse Air Brake, 419 F.2d 787 (2d Cir. 1969), rev'd on other grounds, 490 F.2d 332 (1973). In conformity with Crane, the Fifth Circuit explicated the five elements that a plaintiff must plead and prove in order to establish a violation of § 9(a)(2), as follows:

> (1) a series of transactions in a security creating actual or apparent trading in that security or raising or depressing the price of that security, (2) carried out with scienter (3) for the purpose of inducing the security's sale or purchase by others, (4) was relied on by the plaintiff, (5) and affected plaintiff's purchase or selling price.

> Chemetron Corp. v. Business Funds, Inc., 682 F.2d 1149, 1164 (5th Cir. 1982), vacated on other grounds, 460 U.S. 1007 (1983).

Baum v. Phillips, Appel & Walden, Inc., 648 F. Supp. 1518, 1529-30 (S.D.N.Y. 1986); see also, Perry v. Eastman Kodak Co., 1991 U.S. Dist. LEXIS 20914, 17-18 (S.D. Ind. 1991) (adopting the five Chemetron elements) aff'd, 1992 U.S. App. LEXIS 11753.

New Falconbridge argues that the plaintiffs have failed to sufficiently plead scienter and to comply with Federal Rule of Civil Procedure 9(b). (Docket No. 23 at 56.) Specifically, New Falconbridge argues that the plaintiffs' allegations are conclusory, and they have failed to provide any factual allegations to support the proposition that the defendants willfully made material misstatements with the intent to deceive Old Falconbridge shareholders. (Docket No. 23 at 56.) Further, New Falconbridge argues that the plaintiffs' claims should be dismissed because, like with their §10(b) claims, they have failed to adequately plead reliance. (Docket No. 23 at 57.)

The plaintiffs respond that the complaint is sufficient because it alleges that Noranda had a direct and pecuniary motive to ensure the success of the Tender Offer, which in turn depended upon convincing Old Falconbridge's shareholders that each Noranda share was more valuable than it actually was. (Docket No. 33 at 57.) Second, the plaintiffs argue that evidence that Noranda

24

violated SEC Regulation M supports the inference that Noranda was willfully manipulating its stock price. (Docket No. 33 at 58.) Finally, the plaintiffs argue that Noranda's dissemination of an Offering Circular and SEC Registration Statement that contained materially false and misleading statements support the inference that Noranda's acts were willful. (Docket No. 33 at 58 (citing Docket No. 1 at 43-51, 56-59, ¶¶131-152, 164-173).)

The court finds that the plaintiffs' §9(a) claims must fail for many of the same reasons the plaintiffs' §10(b) claims must fail. First, the plaintiffs have failed to adequately plead scienter. Section 9(a) does not prohibit transactions simply because they raise or lower a security's sale price. See, e.g., Spicer v. Chicago Bd. Options Exchange, Inc., 1990 U.S. Dist. LEXIS 14469, 7-8 (N.D. Ill. 1990); Trane Co. v. O'Connor Sec., 561 F. Supp. 301, 304 (S.D.N.Y. 1983) (citing Chris-Craft v. Piper Aircraft, 480 F.2d 341, 383 (2d Cir. 1973)). As discussed above, a pecuniary motive cannot, by itself, act as strong evidence of scienter because, in addition to being a frequent motive for fraud, it is also nearly universally the primary motivation underlying any business transaction. Holding that pecuniary motive alone was sufficient would effectively eviscerate the safeguard against harassing lawsuits that the scienter requirement is intended to represent. Thus, the fact that the defendants' had a pecuniary motive does not support an inference of scienter because it does not present a cogent and compelling inference of fraud that is strong in light of other explanations.

Even when the defendants' pecuniary motive is evaluated in conjunction with the plaintiffs' other allegations presented to support the inference of scienter, the court finds the complaint insufficient to state of claim for a violation of §9(a). The inference of fraud is not cogent and compelling based upon the defendants' alleged violation of SEC Regulation M. The defendants' conduct, including their alleged violation of SEC Regulation M, was publicly apparent and known

25

or readily knowable to the plaintiffs. Thus, the court finds that an innocent explanation for the defendants' alleged conduct is a stronger inference than an inference of fraud.

Finally, although the plaintiffs devote numerous pages of their complaint to detailing alleged inaccuracies in the Offering Circular and SEC Registration Statement, (see Docket No. 1 at 43-51, 56-59, ¶¶131-152, 164-173), for the reasons set forth above with respect to the plaintiffs' §10(b) claims, the court finds the plaintiffs' allegations insufficient to support the strong inference of scienter with respect to their §9(a) claims. Nearly all of the inaccuracies alleged by the plaintiffs relate to the valuation. However, the court finds that the alleged inaccuracies in this valuation cannot support the inference that the defendants acted with the requisite scienter because the valuation was not prepared by the defendants but rather was prepared by an independent investment bank. Because it was TD rather than the defendants who prepared the valuation, the facts relied upon and the methodology utilized indicate little, if anything, as to the defendants' states of mind, and thus the plaintiffs' allegations, when viewed alone or in combination with the plaintiffs' other allegations, cannot support a strong inference of scienter.

Additionally and alternatively, the court finds that New Falconbridge's motion to dismiss the plaintiffs' §9(a) claims must be granted because the plaintiffs fail to adequately plead reliance. Like the plaintiffs' §10(b) and §14(e) claims, reliance is an element of the plaintiffs' §9(a) claims. Perry, 1991 U.S. Dist. LEXIS 20914, 17-18. As discussed above, it would be contrary to the strong public policy in favor of preventing fraud before it occurs to permit a plaintiff who believes a fraud may be occurring and has a remedy available to prevent the fraud from occurring to nonetheless permit the fraud to occur, and then attempt to seek redress under §9(a), §10(b), or §14(e). Therefore, for the same reasons the plaintiffs' §10(b) and §14(e) claims fail the plaintiffs' failure to plead reliance, so too must the plaintiffs' §9(a) claims. See id.

**Failure to State a Claim Under Section 11 of the 1933 Act**

The defendants argue that the plaintiffs' claim under §11 of the 1933 Act must be dismissed because: (1) the plaintiffs have failed to allege that the registration statement for the Tender Offer contained any actionable misstatement or omission; (2) the plaintiffs have failed to comply with the heightened pleading requirements of Rule 9(b); and (3) the plaintiffs have not suffered any recoverable damages.

The plaintiffs respond by arguing that the complaint does sufficiently allege actionable misstatements or omissions; §11 claims need not conform with Rule 9(b), or if the heightened pleading standard applies, the plaintiffs have met the standard; and the plaintiffs have suffered damages and the defendants misinterpret 15 U.S.C. § 77k(e).

The defendants argue that the plaintiffs have suffered no damages because the price of the securities in question on the dates that the complaint was filed and amended were greater than the initial purchase price. Under §11, damages are measured by the difference between the price paid for the security and the price of the security at the time it was sold or when the lawsuit was filed. 15 U.S.C. § 77k(e).

15 U.S.C. § 77k(e) states in relevant part:

Measure of damages; undertaking for payment of costs. The suit authorized under subsection (a) may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought: Provided, That if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material

27

fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable.

The plaintiffs respond that the defendants improperly utilize the market price of Noranda's common shares when calculating the "amount paid." Rather, the plaintiffs argue that the "amount paid" is appropriately the value of their Old Falconbridge shares.

The defendants reply by pointing out that even if the court were to accept the plaintiffs' arguments, nonetheless, the plaintiffs fail to show damages. Specifically, the trading price of one share of Old Falconbridge on May 5, 2005, the date the Tender Offer expired, was Cdn. $39.59. In exchange for each Old Falconbridge share tendered, the plaintiffs received 1.77 shares of Noranda stock. Noranda subsequently became New Falconbridge and on November 7, 2005, the date this lawsuit was filed, a share of New Falconbridge was trading at Cdn. $34.43, thus making the 1.77 shares that the plaintiffs received in exchange for each share of Old Falconbridge worth Cdn. $60.94. Therefore, if the plaintiffs had sold their New Falconbridge shares on the date they filed this lawsuit, they would have earned Cdn. $21.35 per Old Falconbridge share, and thus the plaintiffs cannot prove damages under §77k(e).

With respect to their §11 claims, the complaint is devoid of any allegation of damages other than to say, "By virtue of the foregoing, Stark Trading and Shepherd are entitled to damages under Section 11, as measured by the provisions of Section 11(e), from New Falconbridge." (Docket No. 1 at 80, ¶260.) Absent a claim that the relevant security, in this case the New Falconbridge shares, dropped in value relevant to the exchanged security, in this case the Old Falconbridge shares, the plaintiffs' §11 claims are legally insufficient and must be dismissed. See Grossman v. Waste Management, Inc., 589 F. Supp. 395, 415 n.10 (N.D. Ill. 1984).

28

The plaintiffs' argument presented in response to the defendants' motions to dismiss that they were nonetheless damaged because their consideration for the Noranda shares, i.e. the Old Falconbridge shares, were undervalued, is an argument the court finds insufficient to state a claim under §11, if the plaintiffs had included this allegation in their complaint. The "amount paid" for 1.77 shares of Noranda stock was 1 share of Old Falconbridge stock. The value of one share of Old Falconbridge, at the time the Tender Offer expired, was Cdn. $39.59. Under the circumstances, this market price is a fair determination of the stock's value. See id. at 416 (citing Mills v. Electric Auto-Lite Co., 552 F.2d 1239, 1247 (7th Cir. 1977). The plaintiffs do not allege in their complaint that the defendants deflated the value of Old Falconbridge or did anything to directly manipulate the market price of Old Falconbridge stock. Rather, the plaintiffs allege that the defendants inflated the value of the Noranda shares. When an investor purchases a security at an allegedly inflated price but the security nonetheless increases in value, §11 does not provide that investor with a remedy because the investor is unable to prove damages under §77k(e).

Because the court finds that the plaintiffs have failed to adequately plead damages so as to state a claim under §11, the court shall not address the defendants' other challenges to the sufficiency of the plaintiffs' §11 claim.

**Court Declines to Exercise Supplemental Jurisdiction Over Wisconsin Law Claims**

The plaintiffs' claims regarding New Falconbridge's alleged violations of Wisconsin's statutory and common law, (see Docket No. 1, Counts VIII, IX, and X), are in federal court pursuant to the doctrine of supplemental jurisdiction, because these claims are directly related to the plaintiffs' federal law claims. See 28 U.S.C. § 1367. In dismissing all claims over which this court possesses original jurisdiction, this court may decline to exercise its supplemental jurisdiction over the remaining non-federal claims. § 1367(c)(3). Although not required to do so, ordinarily a district

court will decline to exercise its supplemental jurisdiction when all federal claims have been dismissed. Croplife Am., Inc. v. City of Madison, 432 F.3d 732, 734 (7th Cir. 2005); Van Harken v. City of Chicago, 103 F.3d 1346, 1354 (7th Cir. 1997); Boyce v. Fernandes, 77 F.3d 946 (7th Cir. 1996). Having dismissed all claims over which this court has primary jurisdiction, the court declines to exercise its supplemental jurisdiction over the plaintiffs' state law claims and shall dismiss these claims without prejudice.

**BRASCAN'S MOTION TO DISMISS**

In their complaint, the plaintiffs allege that Brascan is liable for New Falconbridge's alleged violations of the Securities Exchange Act of 1934 pursuant to § 20(a) of the Act, 15 U.S.C. § 78t(a), (Docket No. 1, Count V, at 78-79), and for New Falconbridge's alleged violation of §11 of the Securities Exchange Act of 1933 pursuant to §15 of the Act, 15 U.S.C. § 77o, (Docket No. 1, Count VII, at 80-81), as a "control person" of Noranda and Old Falconbridge. In view of this court's determination that the plaintiffs have failed to set forth any legally sufficient claim under either the 1933 or 1934 Acts, the plaintiffs are effectively precluded from pursuing a claim against Brascan as a control person. Therefore, the court shall grant Brascan's motion to dismiss.

**IT IS THEREFORE ORDERED** that the defendants' motions to dismiss, (Docket Nos. 8, 13), are **granted**. Counts I through VII are dismissed with prejudice. See, e.g., Waypoint Aviation Servs. v. Sandel Avionics, Inc., 469 F.3d 1071, 1074 (7th Cir. 2006). Counts VIII through X are dismissed without prejudice. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 14th day of January 2008.

s/AARON E. GOODSTEIN
United States Magistrate Judge

30